DAVID J. MILLSTEIN, ESQ. (CSB# 87878)
GERALD S. RICHELSON, ESQ. (CSB #267705)
MILLSTEIN & ASSOCIATES
100 The Embarcadero, Suite 200
San Francisco, CA 94105
Telephone: (415) 348-0348
Facsimile:  (415) 348-0336
Email:  dmillstein@millstein-law.com
Email:  grichelson@millstein-law.com

Attorneys for Plaintiffs:
DR. ALAN SAMPSON MD &
KATHY SAMPSON on behalf of the
ESTATE OF ANDREW SAMPSON

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. ALAN SAMPSON MD & KATHY SAMPSON on behalf of the ESTATE OF ANDREW SAMPSON.<br><br>Plaintiff,<br><br>vs.<br><br>UKIAH VALLEY MEDICAL CENTER; ADVENTIST HEALTH; DEBBIE L MARKS, MD; PACIFIC REDWOOD MEDICAL GROUP; CALSTAR; &the DEPARTMENT OF CALIFORNIA HIGHWAY PATROL; and Does 1 through 10.<br><br>Defendants. | **Case No.:**<br><br>**COMPLAINT FOR:**<br><br>1. **Violation of the Emergency Medical Treatment and Labor Act**<br>2. **Medical Negligence**<br>3. **Negligence**<br>4. **Violation of 42 U.S.C. § 1983**<br>5. **Wrongful Death**<br>6. **Survival Action** |

1

COMPLAINT

## I.  GENERAL ALLEGATIONS

### A. THE PARTIES

1. Plaintiffs DR. ALAN SAMPSON MD & KATHY SAMPSON on behalf of the ESTATE OF ANDREW SAMPSON ("Plaintiffs") are the only heirs in law and are the natural parents of decedent ANDREW SAMPSON, an unmarried 24 year old African- American male who died on January 11, 2014 and sues as the personal representative of his estate pursuant to Cal. Civ. Code §§ 377.60 and 6402(b).

2. Defendant UKIAH VALLEY MEDICAL CENTER (hereinafter "UVMC") is a not for profit hospital of unknown organization located in Mendocino County, California.  Upon information and belief Plaintiffs allege UVMC is a non-profit hospital administered of unknown affiliation with ADVENTIST HEALTH.

3. Defendant ADVENTIST HEALTH (hereinafter "ADVENTIST") is a not for profit corporation formed in and under the laws of the state of California which holds an affiliation of unknown dimensions with UKIAH VALLEY MEDICAL CENTER.

4. At all times mentioned herein, Defendant PACIFIC REDWOOD MEDICAL GROUP was a professional medical Partnership organized under the laws of the State of California.

5. Defendant DEBBIE L MARKS, MD (hereinafter "Dr. Marks") is a physician specializing in Emergency Medicine employed by PACIFIC REDWOOD MEDICAL GROUP, and a resident of St. Helena, CA in the county of Napa.

6. Defendant CALSTAR is a not for profit regional air medical services company of unknown organization serving California and northern Nevada and headquartered in McClellan, CA in the county of Sacramento.

7. Defendant DEPARTMENT OF CALIFORNIA HIGHWAY PATROL (hereinafter "CHP") is an agency of the state of California.

8. Defendant JOHN DOE 1 is the CHP officer that first arrived at the scene of the accident.

9. Defendant JOHN DOE 2 is the CHP officer that informed Dr. Alan Sampson of the events taking place during the morning of January 11, 2014. It is unclear whether or not JOHN DOE 1 and JOHN DOE 2 are the same individual.

10. The true names and capacities of the persons and entities named herein as Does 3 through 10, inclusive, whether individual, corporate, associates or otherwise, are presently unknown to Plaintiffs, and therefore Plaintiffs issues said persons and entities by such fictitious names. Plaintiffs will seek leave to amend this complaint to show the true names and capacities of these Doe defendants when they have been ascertained, or according to proof at trial.

B. **JURISDICTION AND VENUE.**

10. This Court possess federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings suit against Defendants UVMC and ADVENTIST for violation of the Emergency Medical Treatment & Labor Act and against Defendant CHP for violation of 42 U.S.C. 1983.

11. This court possesses supplemental jurisdiction over the remaining causes of action under 28 U.S.C. § 1367 because each of those claims form part of the same case or controversy under Article III of the United States Constitution.

C. **BACKGROUND.**

12. Early in the morning of January 11, 2014 the decedent Andrew Sampson (hereinafter the "Andrew") left Rhonert Park, CA at approximately 1:05 a.m. to return to his home in Kelseyville, CA. Andrew traveled north on Highway 101 then merged onto Highway 20 east. On the exit ramp onto Highway 20 the "tie rod" on the front driver's side of Andrew's 1997 Honda Accord detached causing Andrew to lose control of the vehicle. The vehicle went over the embankment on the southern side of Highway 20. The vehicle rolled over onto its roof and settled in a drainage ditch just east of the Highway 101/ Highway 20 interchange. During the accident the Andrew was thrown from the vehicle and came to rest in the drainage ditch next to the vehicle. The location is approximately 75 miles north of Rohnert Park, taking on average one hour and fifteen minutes by car. This places the accident at approximately 2:20 a.m.

13. The CHP were first notified of the accident at 4:06 a.m. by a passing motorist. The first unit was dispatched at 4:09 a.m. and arrived at 4:14 a.m. EMS arrived on the scene at

3

COMPLAINT

4:23 a.m. Andrew was found with an altered state of consciousness, confused, no recall of the event, but able to follow simple commands.

14. A helicopter evacuation was ordered, but for yet unknown reasons[1] was not performed. Andrew was eventually transported by ambulance to UVMC which is located approximately six miles from the scene of the accident. CALSTAR had a helicopter land at the UVMC helipad and await the ambulance's arrival with a plan to transport the patient by helicopter to Santa Rosa Memorial Hospital.

15. Upon arrival at UVMC at 5:04 a.m. Dr. Marks determined that the Andrew had an emergency medical condition. Andrew was suffering from multiple fractures, head trauma, and internal bleeding that would lead to his eventual death by aspiration of blood into his lungs. Dr. Marks took an X-Ray of the Andrew's chest and provided an IV of fluids. Despite the fact that he was not stabilized, his pulse was rising and he had evidence of hemothorax, she ordered him transferred to Santa Rosa Memorial Hospital.

16. At some time between 5:37 a.m. and 5:43 a.m. Andrew was discharged from UVMC for transport by ambulance to Santa Rosa Memorial Hospital. Dr. Marks did not write a written declaration that the greater level of care at Santa Rosa Memorial Hospital outweighed the risk of transporting the Andrew before he was properly stabilized. Santa Rosa Memorial Hospital is located 60 miles south of UVMC and takes approximately an hour by car to reach, but only 18 minutes by helicopter. Within minutes of leaving UVMC Andrew began having trouble breathing and his pulse weakened. Andrew died en route to Santa Rosa Memorial Medical Center.

17. Andrew was then diverted to Healdsburg District Hospital where he was pronounced dead at approximately 6:18 a.m.

18. After Andrew passed away it took over five hours for his father Alan Sampson, M.D. to be contacted despite the fact that he provides consulting services at UVMC. The CHP officer JOHN DOE 2 informed Dr. Sampson that Andrew had been placed at the accident scene

---

[1] There is a plethora of conflicting evidence as to the reason why a helicopter did not land including from a brown out the scene, too much dust at the scene, as well as poor weather at the receiving hospital. Highway 20 is paved and was well lit given the number of emergency personnel on site and there is no indication of poor weather on January 11, 2014 at either Santa Rosa Memorial Hospital nor UC Davis Medical Center.

COMPLAINT

in a helicopter for transport to Santa Rosa Medical Center, that helicopter returned to UVMC when the Andrew became unstable where he was stabilized after which he was returned to the helicopter and expired in the air over Healdsburg. Similarly, the CHP's Incident Detail Report states that the Andrew was flown to UVMC from the crash site by helicopter.

19. Andrew was at no point transported by Helicopter. On information and belief the CHP officer JOHN DOE 1 and/ or CALSTAR directed air transport not to land at the crash site and now seeks to cover up having done so.

## FIRST CAUSE OF ACTION

**(Against Defendants UVMC and ADVENTIST for Violation of the Emergency Medical Treatment and Labor Act. 42 U.S.C. 1395dd)**

20. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

21. Upon information and belief Plaintiffs allege that UVMC and ADVENTIST treat Medicare patients and receive remuneration for the federal government for those services.

22. Upon arrival by ambulance at UVMC Andrew was admitted to the hospital due to being in an emergency condition requiring immediate care.

23. Andrew had acute symptoms including irregular breathing, low blood pressure, increased pulse, impaired consciousness, internal bleeding in his chest cavity, multiple abrasions, multiple fractured bones, possible head trauma, and hemothorax of the chest.

24. Dr. Marks identified that Andrew's acute symptoms were of sufficient severity that the absence of immediate medical attention could reasonably be expected to result in placing the health of the individual on serious jeopardy, result in serious impairment to bodily functions, or serious dysfunction of a bodily organ or part.

25. Andrew did not request a transfer to another facility in writing.

26. No physician signed a certification that based on information available at the time of transfer, the medical benefits reasonable expected from the provision of appropriate medical treatment at another medical facility outweigh the increased risks to the individual.

27. Andrew was not stabilized.

28. Material deterioration of the Andrew's condition was likely within a reasonable medical probability, to result for or occur during the transfer of the individual form UVMC to Santa Rosa Memorial Hospital an hour drive away.

29. Andrew died during the transfer from UVMC to Santa Rosa Memorial Hospital as a result of not being stabilized before transfer.

30. Wherefore Plaintiffs seek relief as follows.

## SECOND CAUSE OF ACTION

**(Against Defendants DR. MARKS, PACIFIC REDWOOD MEDICAL GROUP, UVMC, and ADVENTIST for Medical Negligence.)**

31. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

32. Defendant Dr. Marks had a duty to use the level of skill, knowledge, and care in the diagnosis and treatment of the Andrew that other reasonably emergency room physicians would use in the same or similar circumstances.

33. Dr. Marks is employed by PACIFIC REDWOOD MEDICAL GROUP.

34. In failing to diagnose and treat Andrew's emergency medical conditions the Defendant Dr. Marks failed to use the level of skill, knowledge, and care in the diagnosis and treatment of the Andrew that other reasonably emergency room physicians would use in the same or similar circumstances.

35. Defendant Dr. Marks failure to diagnose and treat Andrew's emergency medical conditions are the proximate cause of Andrew's death.

36. Andrew was damaged personally prior to death and Plaintiffs have been damaged by the death of their son.

37. On information and belief Plaintiffs allege that Defendants UVMC and ADVENTIST failed to establish policies, procedures and practices designed to assure proper staffing and ensure EMTALA compliance; failed to use reasonable care in allowing a tradition of transferring difficult medical cases and or uninsured patients to larger hospitals.

38. On information and belief Plaintiffs allege these failures establish negligence per say and do not exhibit the skill knowledge and care associated with hospitals containing emergency rooms of similar size and capacity.

39. On information and belief Plaintiffs allege that as a result of the above failures Andrew was provided with inadequate medical care that resulted in his death.

40. On information and belief Plaintiffs allege that these failures are a proximate cause of Andrew's death.

41. Wherefore Plaintiffs seek relief as follows.

### THIRD CAUSE OF ACTION

**(Against Defendants CALSTAR, JOHN DOE 1, JOHN DOE 2, and CHP for Gross Negligence and Bad Faith.)**

42. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

43. Defendants CALSTAR and CHP officer JOHN DOE 1, once undertaking the duty of care and transport of Andrew, owed him a duty of care of a prudent, reasonable EMS provider of the same level of training.

44. Defendants CALSTAR, JOHN DOE 1, and CHP breached that duty in a grossly negligent manner and in bad faith by not ordering an air transport of Andrew to Santa Rosa Memorial Hospital or if that hospital suffered from inclimate weather conditions[2] that he would be transferred by helicopter to UC Davis Medical Center.

45. On Information and belief Plaintiffs allege Defendants CALSTAR and CHP did not provide air transport to Santa Rosa Memorial Hospital or if that hospital suffered from inclimate weather conditions to UC Davis Medical Center was due to CHP and CALSTAR's belief that Andrew lacked medical insurance and would be unable to pay for the transport.

46. As a proximate result of Defendants gross negligence and bad faith, Andrew died en route to Santa Rosa Memorial Hospital via ambulance.

---

[2] There is no evidence that either hospital was suffering from inclimate weather that would preclude the landing of a helicopter.

7

COMPLAINT

47. Wherefore Plaintiffs seek relief as follows.

## FOURTH CAUSE OF ACTION

**(Against Defendants CALSTAR, JOHN DOE 1, and JOHN DOE 2 for Violation of Andrew's Civil Rights Under 42 U.S.C. 1983)**

48. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

49. On information and belief Plaintiffs allege CALSTAR relies on government assistance and benefits and performs a traditional government function.

50. The cause of Andrew's death was aggravated in a unique way by CALSTAR's apparent government authority.

51. On information and belief Plaintiffs allege that defendants CALSTAR and JOHN DOE 1 profiled Andrew based in part on his race.

52. On information and belief Plaintiffs allege that defendants CALSTAR and JOHN DOE 1 determined that Andrew would be unable to pay for helicopter transport based on his race.

53. Due to the above Defendant CALSTAR and JOHN DOE 1's decision not to provide helicopter transport to Santa Rosa Memorial Hospital violated Andrew's equal protection clause rights under the 14th Amendment of the United States Constitution.

54. Due to this violation of Andrew's right to equal protection, Andrew was denied air transport to Santa Rosa Memorial Hospital which was a proximate cause of his death.

55. Wherefore Plaintiffs seek relief as follows.

## FIFTH CAUSE OF ACTION

**(Against All Defendants For Wrongful Death.)**

56. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

57. As a direct result of the conduct alleged against Defendants herein and the death of their son, Plaintiffs sustained economic damage consisting of the value of lost financial and

other support from the Andrew, the value of gifts or benefits Andrew would have provided, the value of funeral or burial expenses and reasonable value of household services the Andrew would have provided.

58. As a direct result of the conduct alleged against Defendants herein and the death of their son, Plaintiffs sustained non-economic damage consisting of loss of the love, companionship, comfort, care assistance, protection, affection, society and moral support.

59. Wherefore Plaintiffs seek relief as follows.

## SIXTH CAUSE OF ACTION

### (Survival Action.)

60. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

61. Plaintiffs, as the parents of Andrew and the successors in interest for the purpose of bringing this action, seek recovery under Cal. Code Civ. Proc. § 377.30 and 377.32. Decedent sustained pain and suffering prior to his death.

62. Wherefore Plaintiffs seek relief as follows.

### II. PRAYOR

WHEREFORE, Plaintiffs pray for judgment against Defendants as set forth below:

1. Non-economic damages in excess of the minimum jurisdictional limit of this court;
2. Funeral, burial and other expenses according to proof;
3. Loss of Andrew's care and support, according to proof;
4. Interest as allowed by law;
5. For punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar wrongful conduct;
6. For attorneys' fees and costs of suit herein incurred, as permitted by law; and
7. Any and all other further damages or relief to which Plaintiff is entitled and are deemed just by this court;

9

COMPLAINT

Dated: January 12, 2015  MILLSTEIN & ASSOCIATES

By: _____/S/_____
David J. Millstein, Esq.
Attorneys for Plaintiff

COMPLAINT