UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN SAMPSON, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>UKIAH VALLEY MEDICAL CENTER, et al.,<br><br>　　　　Defendants. | Case No. 15-cv-00160-WHO<br><br>**ORDER DENYING MOTIONS TO DISMISS AND SETTING CASE MANAGEMENT SCHEDULE**<br><br>Re: Dkt. Nos. 53, 55 |

The parents of Andrew Sampson bring this action concerning the conduct of various defendants during the two hours preceding the death of their son, Andrew, who had been in an automobile accident. Defendants CALSTAR and Ukiah Adventist Hospital ("Ukiah Valley Medical Center" or "UVMC"), move to dismiss certain claims in the Second Amended Complaint (SAC). The Sampson's SAC added some clarity and cured the pleading deficiencies I found in my last order. There is no need for oral argument on the motions and the hearing and case management conference set for December 23, 2015 are VACATED. The motions to dismiss are DENIED.

## BACKGROUND

On January 11, 2014, Andrew was driving home early in the morning when he lost control of his vehicle. Second Amended Complaint ("SAC") ¶ 12 (Dkt. No. 49). The car went over an embankment and rolled over on its roof. *Id.* The accident occurred at approximately 2:20 a.m., and was not discovered until 4:06 a.m. *Id.* ¶¶ 12-13. After being notified of the accident by a passing motorist, the California Highway Patrol ("CHP") dispatched a unit at 4:09 a.m. that arrived at the accident at 4:14 a.m. *Id.* ¶ 13. Andrew was alive and able to follow simple commands, but was in an altered state of consciousness and could not recall the accident. *Id.* ¶ 13.

Emergency personnel ordered a helicopter evacuation. After CALSTAR's initial but

unsuccessful attempt to land a helicopter at the site, Andrew was transported by ambulance to UVMC, which was six miles away. *Id.* ¶ 18. CALSTAR landed the helicopter at UVMH "with a stated plan to transport the patient by helicopter to Santa Rosa Memorial Hospital." *Id.* ¶ 19.

When Andrew arrived at UVMC 5:04 a.m., he "was suffering from multiple fractures, blunt chest trauma and head trauma." *Id.* ¶ 20. He had low blood pressure and an elevated pulse. *Id*. The blunt force trauma caused internal bleeding, including the collection of a significant amount of bodily fluid between the lung and chest cavity known as a hemothorax." *Id*.

Defendant Debbie L. Marks, MD, a physician specializing in emergency medicine, examined Andrew and took an X-Ray of the Andrew's chest and confirmed that he was suffering from blunt chest trauma from the rollover, a hemothorax of the left lung, and a head trauma including impaired consciousness. According to plaintiffs, the "normal and ordinary progression of blunt chest trauma and head injury of this nature is that the impaired lung function caused by the blunt chest trauma interferes with breathing and causes anoxia, which in turn results in a secondary and more serious brain injury and general organ failure." *Id.* ¶ 21. "In order to stabilize a patient in Andrew's condition as presented, the patient must be assured sufficient oxygen supply. The consequence of not receiving such oxygen supply is that such patient is likely to suffer a secondary brain injury and death. This stabilization is easily provided at a hospital such as UVMC by intubating the patient and hooking the patient up to a portable ventilator to assure his oxygen supply until surgical intervention." *Id.* ¶ 22.

Plaintiffs allege that instead of intubating Andrew and putting him on a portable ventilator, Dr. Marks ordered Andrew transferred. *Id.* ¶ 23. Andrew should have been, but was not, "stabilized" prior to transfer. "[A] patient with a head injury and blunt trauma is required to be intubated and put on a temporary ventilator, to assure oxygenation of his blood supply the lack of which causes secondary brain injury and death. Andrew could not, absent intubation be reasonably expected to survive a 1 hour ambulance ride to Santa Rosa, as ordered by Dr. Marks." *Id*.

At either 5:22 a.m. or 5:37 a.m. Andrew was discharged from UVMC for transport by ambulance to Santa Rosa Memorial Hospital. Although Andrew was transported by MEDSTAR ground ambulance, CALSTAR flight nurses boarded the ambulance and provided his care. *Id.* ¶

24. While Andrew was with MEDSTAR/CALSTAR for transport, his pulse was at 126, and that his blood pressure had dropped to 60/40. Plaintiffs alleged that this "is clear indication that Andrew was unstable." *Id*. ¶ 25. According to the ambulance records, however, while Andrew was placed in their care at 5:22 a.m., the ambulance did not depart UVMC until 5:28 a.m. *Id*.

Within minutes of leaving UVMC Andrew began to have trouble breathing and his pulse weakened. *Id*. ¶ 26. Santa Rosa Memorial Hospital is located 60 miles south of UVMC and takes approximately an hour by car to reach, but only 18 minutes by helicopter. EMS personnel began administering Epinephrine at 5:37a.m., nine minutes after departing UVMC. *Id*.

Andrew was then diverted to Healdsburg District Hospital where he was pronounced dead at approximately 6:18 a.m. Id. ¶ 27.

The SAC alleges five causes of action: (i) violation of the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, against UVMC; (ii) medical negligence, against UVMC;[1] (iii) gross negligence and bad faith, against CALSTAR[2]; (iv) wrongful death, against all defendants; and (v) survival action, against all defendants.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

---

[1] This cause of action is also alleged against Dr. Marks and Pacific Redwood Medical Group, but those defendants have not moved to dismiss.
[2] This cause of action is also alleged against MEDSTAR and Doe Officers who responded on the scene of the accident, but those defendants have not moved to dismiss.

3

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I. CALSTAR'S MOTION TO DISMISS

CALSTAR moves to dismiss the gross negligence cause of action, and the dependent wrongful death and survival causes of action, arguing that plaintiffs have still not pleaded facts supporting a claim of "gross negligence." In the SAC, plaintiffs allege gross negligence on two separate theories: one, that CALSTAR transported Andrew by ground to Santa Rosa without intubating or giving him blood, despite their knowledge that Andrew's pulse had risen and his blood pressure dropped, SAC ¶ 56; and the other, that CALSTAR "waived" off the helicopter and failed to transport Andrew by air to Santa Rosa Memorial Hospital or UC Davis Medical Center based on CALSTAR's belief that Andrew did not have insurance to cover the air transport based on Andrew's ethnicity. SAC ¶ 54. Plaintiffs allege that CALSTAR had a duty, while still at the hospital, to obtain remediation for pulse and blood pressure issues prior to their departure, and had a duty but failed to notify Dr. Marks of Andrew's deteriorating condition prior to departure. *Id.* ¶¶ 57, 59.

As noted in my prior Order, to allege a claim for gross medical negligence, a plaintiff must

allege "extreme conduct on the part of the defendant." *Frittelli, Inc. v. 350 N. Canon Drive, LP*, 202 Cal. App. 4th 35, 52 (2011) (internal quotation omitted; *see also City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 754 (2007) (conduct must demonstrate either a "want of even scant care" or "an extreme departure from the ordinary standard of conduct."). What constitutes gross negligence is "usually" a question of fact. *Frittelli, Inc.*, 202 Cal. App. 4th at 52.

Plaintiffs have added facts regarding CALSTAR's failure to obtain remediation and/or notify Dr. Marks of Andrew's high pulse and low blood pressure and obtain intubation and blood transfusion prior to transporting him. The SAC also specifically alleges that CALSTAR's failure to provide intubation and blood transfusion itself was grossly negligent. SAC ¶¶ 57-61. On a motion to dismiss, I cannot resolve the question of fact as to whether the failure to seek or provide intubation or blood transfusion constitutes gross medical negligence, or whether those medical decisions were in the hands of other defendants (*e.g.*, Dr. Marks). Plaintiffs have, therefore, stated a gross negligence claim on this ground against CALSTAR.

In dismissing this cause of action against CALSTAR before, I concluded that the allegation of failure to transport by air – the only ground asserted – was insufficient to state a gross medical negligence claim because plaintiffs had not "pleaded facts to establish that CALSTAR's failure to transport Andrew via helicopter was an 'extreme' departure from ordinary practices, or even that it demonstrated a lack of 'scant' care. There are almost no facts alleged about what CALSTAR employees actually did, whether and why they decided not to transport Andrew, or how they sought to cover up the fact that Andrew was not ultimately transported by helicopter." September 10, 2015 Order at 8. In the SAC, plaintiffs now allege facts regarding the dust at the accident site and attempts to wet down the landing zone to allow the helicopter to land (SAC ¶ 18) and the ability of the helicopter to land at Sonoma County airport (SAC ¶ 31). They argue that, given the lack of discovery and the conflicting evidence in the police and medical reports about why the helicopter was waived off and why Andrew was subsequently transported from UVMC by ground, they have alleged sufficient facts at this juncture. Opposition to Motion to Dismiss (Dkt. No. 59) at 6-7. I agree that the gross negligence cause of action is now plausible enough to proceed on this theory as well.

5

Plaintiffs' fourth cause of action for wrongful death is largely derivative of the gross negligence cause of action. As plaintiffs have stated a claim for gross negligence, they have likewise stated a wrongful death claim. Similarly, CALSTAR's arguments concerning the fifth cause of action for survival are moot because plaintiffs have pleaded facts to support their gross negligence claim and plaintiffs have submitted a declaration of survivorship (*see* Dkt. No. 60).

## II. UVMC'S MOTION TO DISMISS

UVMC moves to dismiss plaintiffs' re-pleaded medical negligence causes of action (and related wrongful death and survival causes of action), as well as plaintiffs' EMTALA claim.

With respect to the medical negligence claim (Second Cause of Action), in their FAC plaintiffs alleged medical negligence on behalf of UVMC based on UVMC's failure "to establish policies, procedures and practices designed to assure proper staffing and ensure EMTALA compliance; [and] fail[ure] to use reasonable care in allowing a tradition of transferring difficult medical cases and or uninsured patients to larger hospitals." In my prior Order I held that these allegations "cannot form the basis of a medical negligence claim." September 10, 2015 Order at 13. In their SAC, plaintiffs allege no new facts to support this claim. They reassert the allegations regarding deficient EMTALA policies and reasonable care in allowing a "tradition" of transfer in violation of EMTALA. SAC ¶. 46. They argue – again – that the "same facts comprising the EMTALA violations combine with the other facts to equate to medical negligence in UVMC's discharge and transfer policies." Opposition to UVMC Motion (Dkt. No. 57) at 2.

As with the FAC, the SAC "does not contain any allegations that would establish negligence on the part of UVMC," and plaintiffs fail add any facts to show that UVMC personnel treated plaintiff negligently. September 10, 2015 Order at 13.

However, with respect to the theory that UVMC can be liable in part or whole for Marks' medical negligence under a theory of agency, the SAC adds new information. Specifically that "Defendant PACIFIC REDWOOD MEDICAL GROUP" was Marks' employer and that "PACIFIC REDWOOD MEDICAL GROUP holds an exclusive contract to provide Emergency Department Services to UVMC and ADVENTIST HEATH, for the Emergency Room at UVMC."

SAC ¶ 4. Because the issue of whether an emergency room doctor can be considered an actual or ostensible agent of a hospital is "a quintessential question of fact" (*Whitlow v. Rideout Mem'l Hosp.*, 237 Cal. App. 4th 631, 635 (2015)), and plaintiffs have alleged that Marks' provision of care was negligent, the motion must be denied with respect to the standard of care provided to Andrew.

As plaintiffs have adequately alleged a breach in the standard of care against UVMC through Marks, plaintiffs have likewise stated a claim for wrongful death (Fourth Cause of Action) and survival (Fifth Cause of Action).[3]

With respect to the EMTALA claim, in my prior Order I dismissed the EMTALA "transfer" claim under 42 U.S.C. § 1395dd(c)(1) (EMTALA restrictions on transferring patients who are not stabilized) because plaintiffs had not pleaded "sufficient facts that UVMC failed to properly stabilize Andrew before transferring him." September 10, 2015 Order at 11. In the SAC, plaintiffs add specific allegations that in order to stabilize a patient with the conditions Dr. Marks diagnosed, UVMC through Marks should have intubated the patient and hooked the patient up to a portable ventilator to assure his oxygen supply until surgical intervention. SAC ¶ 22. But instead of stabilizing Andrew, he was ordered transferred without these interventions. *Id*. ¶ 23. These additional allegations assert the need for intubation was "detected" but not provided, and are sufficient to allege the EMTALA claim against UVMC for failure to stabilize Andrew.

## CONCLUSION AND CASE SCHEDULE

CALSTAR'S and UVMC's motions to dismiss the claims alleged against them in the SAC are DENIED. They shall answer the SAC by January 11, 2016.

Today, the parties filed a proposed case management schedule, which I will adopt with minor adjustments:

| | |
|---|---|
| April 15, 2016 | Last Day to Amend |
| October 3, 2016 | Fact Discovery Cutoff |
| October 31, 2016 | Expert Designation |

---

[3] As noted above with respect to the CALSTAR motion, the provision of the Cal. Code Civ. Proc. § 377.32 affidavit, moots the separate challenge to the survival claim.

| | |
|---|---|
| January 11, 2017 | Expert Discovery Cutoff |
| March 8, 2017 | Last Day to Hear Dispositive Motions |
| May 8, 2017 | Pre-Trial Conference |
| June 5, 2017 | Trial |

The parties shall file a Notice of Need for ADR Phone Conference by Jan. 8, 2016 and otherwise comply with the ADR Local Rules.

A further Case Management Conference is set for April 19, 2016 at 2:00 p.m. The parties shall file a Joint Statement by April 12, 2016. The Court expects that the parties will have completed sufficient discovery by that point to be ready to engage in meaningful settlement discussions, if they have not already done so.

**IT IS SO ORDERED**.

Dated: December 22, 2015

_____
WILLIAM H. ORRICK
United States District Judge